THE STATE OF IOWA, Appellee, v. M. B. FOSTER,
Appellant.

Larceny : IDENTITY OF PERSON : EVIDENCE. The defendant was brought
from the state of Ohio to Appanoose county, Iowa, to answer an
indictment for the theft of two horses, found against one Foster
five years previous, and who had jumped his bail. In defense, he
claimed that his name was Jared Hickey, and that, at the time of
the commission of the offense alleged, he resided near Coldwater,
Michigan. Twenty-two out of twenty-three witnesses, called by
the state, testified that defendant was the identical man who had
been found in the possession of the horses, and was arrested and
lodged in jail five years before for the offense charged. Seven
persons, among whom was the sheriff who made the former arrest,
and the jailer then in charge of the jail, testified that defendant
was not the man formerly arrested for the same offense. *Held*,
that a verdict finding defendant guilty was sufficiently supported
by the evidence.

*Appeal from Appanoose District Court.*—HON. H. C.
TRAVERSE, Judge.

WEDNESDAY, OCTOBER 15, 1890.

THE defendant was tried, convicted, and sentenced
to imprisonment in the penitentiary for two years and
six months, upon an indictment for the larceny of two
horses, and he appeals.

*L. I. McCoun* for appellant.

*John Y. Stone*, Attorney General, and *C. F. Howell*, County Attorney, for the State.

ROTHROCK, C. J.—I.  On the sixteenth day of June, 1883, two horses, the property of one Silknitter, were stolen from his barn on his farm near Centerville, in Appanoose county.  As soon as the theft of the horses was discovered, pursuit was made; and, in a day or two after the crime was committed, the thief was caught in Warren county, with the horses in his possession.  He gave his name as that of William Foster. He was brought back to Centerville, by way of Chariton, and lodged in jail, to await the action of the grand jury.  His bail was fixed at the sum of five hundred dollars.  On the first day of September, 1883, before the indictment was found, one W. S. Scott appeared and deposited five hundred dollars in lieu of bail, and Foster was released from custody.  An indictment was found shortly afterwards; and, when Foster was called to answer thereto, he failed to appear, and the deposit of five hundred dollars was forfeited.  The *status* of the cause remained unchanged for about five years, when a man was arrested at Bowling Green, in the state of Ohio, upon a charge of horse-stealing.  The sheriff of Appanoose county suspected that the man arrested in Ohio was the same person who stole Silknitter's horses; and, upon request, the authorities in Ohio sent a photograph of their prisoner to said sheriff, who proceeded to Ohio, procured a requisition from the governor of that state, and brought the defendant to Centerville to answer to the indictment.  A plea of not guilty was interposed, and a trial was had, and the defendant was found guilty, and the verdict was set aside, and a new trial granted.  The new trial resulted in a verdict of guilty, and from a judgment of conviction, as above stated, this appeal was taken.

It is conceded that the two horses were stolen, and that the man in whose possession they were found was

the person who committed the crime. The defendant claimed that he was not the person who was found in the possession of the stolen property, and that, at the time the crime was committed, and for all the time the thief was in jail, he (the defendant) openly and publicly resided near Coldwater, Michigan, and was not at any time during such imprisonment in this state; and that he is not William Foster, but that his name is and was Jared Hickey. It will thus be seen that the only real question for the jury to determine was whether the defendant was the same person who was found in possession of the horses. If he was the same person, the verdict is right; and, if he was not, an innocent man has been convicted of the crime.

The person who was arrested while in possession of the horses and brought from Warren county, by way of Chariton, to Centerville, taken before a justice of the peace, and committed to jail, was of course seen by many people. The state called and examined twenty-three witnesses upon the question of identity, and twenty-two of them testified positively that the defendant was the identical man who was arrested and brought to Centerville and placed in jail. Many of these witnesses appear to have been in possession of such knowledge of Foster as to leave little doubt that the defendant is the same man. One of them was the man at whose house Foster was stopping with the horses when the arrest was made. Another rode in a buggy with Foster from Chariton to Centerville. One or two of the witnesses were comrades of Foster while he was in jail. Others went to the jail while he was confined there for the purpose of seeing him. Now, while it is true that about five years elapsed from the time that Foster was released from jail until the defendant was brought from the state of Ohio to this state, yet the evidence of the identity of the person of the defendant when the state rested its case was more than sufficient to convict the defendant. It was absolutely overwhelming.

The defendant called and examined seven witnesses, three of whom were residents of Appanoose county.

Three were residents of the state of Michigan, and the defendant was also examined in his own behalf. Two of the witnesses from Michigan claimed to be the mother and sister of the defendant. The resident witnesses were the ex-sheriff who arrested the man who called himself Foster, and the jailer who was in charge of the jail while Foster was confined therein. They both testified positively that the defendant was not Foster. It appears from their testimony that, after the defendant was brought from Ohio, a man came to Centerville clandestinely, and was also at Lineville, Missouri, and that his presence was made known to them, and he claimed that he was the man who committed the crime. They gave facts and circumstances which the clandestine visitor related to them as having occurred while he was in jail, which convinced them that he was the man who was in jail as the thief. Of course, the women claiming to be the mother and sister of the defendant were equally positive, and the testimony of the defendant was to the same effect.

Notwithstanding the testimony of these witnesses, the jury found the defendant guilty. In our opinion, they were fully warranted in so finding. We cannot give the evidence in detail. It is sufficient to say that there are many circumstances which lead to the conclusion that the man who appeared at Centerville and Lineville, and claimed to be Foster, was not the man he represented himself to be. The state in some way procured a picture, known as a "tintype," of this person. It is true it is not admitted by the defendant that the picture is that of the man who claimed to be Foster, but the evidence shows that fact without much question; and it appears, without any real question, that the tintype is not a picture of the Foster who stole the horses in 1883. We are content to abide by the verdict of the jury, without any serious question in our minds as to its correctness.

II. There is little more in the case which we think demands attention at our hands. The instructions given by the court to the jury are fair to the defendant.

There is no just ground of complaint as to any of them ; and we may say the same of the objections to the rulings on the admission and exclusion of evidence, and other rulings of the court.   To state them would be sufficient to show that they were correct, and we must be permitted to dispose of them in this general way.   The judgment of the district court will be AFFIRMED.